IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:16-CV-233-FL

BOBBY JO ROSINBAUM and ROBERT    )
WILLIAM MORGAN, JR., individually    )
and on behalf all similarly situated    )
individuals,    )
    )
        Plaintiffs,    )
    )
        v.    )        ORDER
    )
FLOWERS FOODS, INC., and    )
FRANKLIN BAKING CO., LLC,    )
    )
        Defendants.    )

This matter is before the court on plaintiffs' motion to certify conditionally the case as a class

action pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, et seq., (DE

22), and plaintiffs' motion to compel production of documents. (DE 108). Plaintiffs' motion for

conditional certification is granted as set forth herein. Plaintiffs' motion to compel production of

documents is held in abeyance until further notice of the court.

**BACKGROUND**

Plaintiffs, claiming they have been misclassified as independent contractors, commenced this

action in the U.S. District Court for the Western District of North Carolina December 1, 2015, seek

unpaid overtime under the FLSA on behalf of themselves and others similarly situated. The case

was transferred to this district June 27, 2016. Following a period of discovery, which remains

ongoing, plaintiffs filed the instant motion to certify conditionally the case as a collective action pursuant to the FLSA. 29 U.S.C. § 216(b).[1]

Defendant Flowers Foods, Inc. ("Flowers") is the parent holding company for a network of bakeries engaged in nationwide manufacture and sale of baked goods, marketed under various brands including Nature's Own, Cobblestone Bread Company, Roman Meal, Wonder, Home Pride, Bunny Bread, Sunbeam, Dave's Killer Bread, TastyKake, and others. Defendant Franklin Baking Co., LLC ("Franklin"), a Flowers subsidiary, is one such bakery. Franklin bakes Flowers's products and oversees product distribution in North Carolina and South Carolina. Plaintiffs work for Franklin, delivering Flowers's products to retail customers pursuant to a distributor agreement executed by plaintiffs and Franklin. Uniformly, Franklin classifies its distributors as independent contracts and does not pay overtime wages.

Plaintiffs move the court to certify conditionally a FLSA collective class, pursuant to 29 U.S.C. § 216(b), to include all persons who are members of the proposed class described as follows:

> All persons who are or have performed work as "Distributors" for Defendants under a "Distributor Agreement" with Franklin Baking Company, LLC or a similar written contract that they entered into during the period commencing three years prior to the commencement of this action through the close of the Court-determined opt-in period and who file a consent to join this action pursuant to 29 U.S.C. § 216(b).

Defendants oppose the motion on the ground that the distributor agreements at issue confer considerable discretion upon distributors to manage their distributorships and numerous distributors,

---

[1] The FLSA provides, in relevant part, that "[a]n action . . . may be maintained . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. 216(b). A worker becomes a party to a FLSA collective action upon filing a document granting consent to sue on the docket of the court in which a collective action is pending. As set forth in more detail below, the main purpose of conditional certification is to authorize named plaintiffs to issue notice to potential class members so they may opt in and halt the statute of limitations clock. See 29 U.S.C. § 256(a) (providing that a claimant is deemed a party for determining the applicable limitations period upon filing written consent to sue in the court in which the action is brought).

2

in fact, exercise that discretion. Accordingly, they argue that individuals embraced by plaintiffs'

proposed class definition are not "employees similarly situated" as required to certify a class under

the FLSA. Additionally, defendants propose that, if class certification is granted, the class should

include only those distributors who operated out of the same warehouse in Wilmington from which

plaintiffs operated. Finally, defendants oppose the form of proposed notice to potential class

members on grounds that it contains typographical errors, inaccurately summarizes plaintiffs' prayer

for relief, and contains other deficiencies.

In support of their motion, plaintiffs rely upon contracts executed between plaintiffs and

defendants, termed "distributor agreements," which specify the scope of each party's duties as it

relates to distribution of defendants' products. In addition, plaintiffs rely on their own declarations

and deposition testimony from defendants' executives. In opposition, defendants rely on the same

evidence, and, in addition, deposition testimony from other distributors who worked for defendant

Franklin.

In their motion to compel, plaintiffs seek to classify Allen L. Shiver ("Shiver"), president

and chief executive officer of defendant Flowers and Bradley K. Alexander ("Alexander"), the

executive vice president and chief operating officer of Flowers, as custodians of electronically stored

information as contemplated in the stipulation and order regarding production of electronically

stored information and paper documents. (DE 82). Practically speaking, this would require Shiver

and Alexander to produce certain documents including e-mails and other information related to

Flowers's distributorship program. In support of the motion, plainitffs rely upon e-mails evidencing

that Shiver and Alexander were involved in setting company policy related to Flowers's distribution

network.

3

**STATEMENT OF FACTS**

The facts as disclosed by the evidence of record may be summarized as follows. Flowers develops and markets bakery products for sale and distribution through a network of subsidiaries. Franklin, a subsidiary of Flowers, bakes the products that Flowers develops and oversees local sales and distribution within its designated geographic region.

Under defendants' business model, Flowers's subsidiaries, including Franklin, engage laborers pursuant to distributor agreements to deliver defendants' products to retail stores. Retailers include a range of outlets from large chain grocery stores, to fast food chains, to small shops. Defendants' distributor agreements are not all identical; however, certain features of the distributor agreements are always the same. (See Rich Dep. 162:17–20, DE 103-8 ("[W]hen you look at different versions of the distributor agreement, there are only minor changes.") For example, all distributor agreements are structured as a sale of property rights granting to the buyer/distributor an exclusive license to market and sell defendants' products to retailers within a defined territory. Under this arrangement, when a distributor places an order with Franklin for a certain quantity of product, Franklin makes that quantity of product available and sells it to the distributor at a specified discount below the manufacturer's suggested retail price ("MSRP"). The difference between the MSRP and the discount price is known as the "margin," and a distributor's profit constitutes the margin less cost of distribution. Theoretically, this system promotes economic efficiencies where it places directly upon distributors an incentive to increase their profits by reducing distribution costs.

The laissez-faire nature of foregoing arrangement is tempered by provisions of the distributor agreements imposing various affirmative duties upon distributors and vesting in defendants a degree

4

of opportunity to supervise distributors' conduct. In particular, clauses requiring distributors to act in accordance with "good industry practice" in handling defendants' products and to use "best efforts to develop and maximize the sale" of defendants' products grant to defendants at least a modicum of opportunity to oversee downstream implementation of product sales. Distributors must maintain adequate stock at retail outlets, retrieve stale products, charge uniform prices to "major and [c]hain accounts" (defined as retail customers operating more than one outlet), and limit operations to a defined territory.

Additionally, distributors are required to use a handheld computer to track deliveries, quantities of unsold product, and other local market information. Notably, the parties dispute the extent to which defendants use this device to exert direct control over distributors' workflow – defendants contend the handheld computer serves information-gathering purposes only while plaintiffs contend defendants use it to relay strict instructions even if such instructions are cast as informal suggestions.

In addition to requirements described above, the distributor agreements also purport to afford distributors a measure of discretion in operating a distributorship. For example, so long as they effectively serve customers, distributors may set their own work hours, choose an order in which to serve customers, set procedures for interacting with customers, and solicit new customers. Distributors may engage in various forms of advertising by handing out business cards, requesting promotional displays, and negotiating with customers to allocate shelf space. Finally, distributors may promote other efficiencies by trading territory with other distributors, employing helpers, or ordering defendants' products based on independent judgment rather than following suggested guidelines.

5

**DISCUSSION**

A.      Conditional Class Certification

The FLSA requires overtime pay for "employees . . . employed in an enterprise engaged in commerce[.]" 29 U.S.C. § 207.  The FLSA "broadly" defines these terms.  McFeeley v. Jackson Street Entertainment, LLC, 825 F.3d 235, 240 (4th Cir. 2016) (providing that an "employee" is "any individual employed by an employer[;]" an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee[;]" and "employ" means "to suffer or permit to work").

To determine whether an individual qualifies as an "employee" under the FLSA, the court must consider the "economic realities" to determine whether the individual is "economically dependent  on the business to which he renders service or is, as a matter of economic reality, in business for himself." Schultz v. Capital Intern. Sec., Inc., 466 F.3d 298, 304 (4th Cir. 2006).  In turn, courts consider six factors to ascertain the economic realities for a given relationship between a worker and a business, including:

(1)     the degree of control that the putative employer has over the manner in which the work is performed;

(2)     the worker's opportunities for profit or loss dependent on his managerial skill;

(3)     the worker's investment in equipment or material, or his employment of other workers;

(4)     the degree of skill required for the work;

(5)     the permanence of the working relationship; and

(6)     the degree to which the services rendered are an integral part of the putative employer's business.

Id. "No single factor is dispositive[.]" Id.

With respect to class certification, the FLSA provides that an action for unpaid minimum wages and overtime pay may be maintained against an employer "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The statute goes on to state that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Id. Accordingly, there are two requirements for maintenance of a class action under the FLSA: the plaintiffs in the proposed class must be "similarly situated;" and they must opt in by filing their consent to sue with the court. Id.

The Fourth Circuit has not announced a test to determine whether employees are similarly situated under the FLSA; however, courts in this district have held that to be similarly situated for purposes of § 216(b), persons "must raise a similar legal issue as to . . . nonpayment or minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions, but their situations need not be identical." Galvan v. San Jose Mexican Restaurant of NC, Inc., No. 7:16-cv-39-FL, 2016 WL 6205783, at *1, *1 (E.D.N.C. Dec. 21, 2016); Beasley v. Custom Commc'ns, No. 5:15-CV-583-F, 2016 WL 5468255, at *1, *4 (E.D.N.C. Sep. 28, 2016); McLaurin v. Prestage Foods, Inc., 271 F.R.D. 465, 469 (E.D.N.C. Nov. 10, 2010).

Ordinarily, certification of a statutory class action pursuant to the FLSA is a two-step process. Galvan, 2016 WL 6205783, at *2. At the notice stage, early in a case, the court conditionally certifies the class based on the limited record before it and approves notice to putative

7

class members of their right to opt in. Id. The final determination on certification is made later, typically after discovery, when the court has available to it substantially more information. Id.

The fundamental merits question raised in this action – whether plaintiffs properly are classified as employees or independent contractors under the FLSA – presents something of an anomaly in applying the two-step certification procedure described above. Ordinarily, the court addresses merits questions after conditional or final class certification in the context of a motion to dismiss or a motion for summary judgment. See e.g., McFeeley 825 F.3d at 239; Salinas v. Commercial Interiors, Inc., ___ F.3d ___, 2017 WL 360542, at *1 (4th Cir. 2017). Under the text of the FLSA, however, class treatment is made available for only "employees similarly situated." 29 U.S.C. § 216(b) (emphasis added). Therefore, to determine, whether conditional class treatment is warranted, the court must consider as a threshold matter the question regarding plaintiffs' FLSA status.

The court is not aware of any precedent, and the parties have cited none, addressing the standard of proof required to support a threshold finding that plaintiffs qualify as employees for purposes of conditional certification. However, the Supreme Court has clarified that the purpose of case management procedures under the FLSA, such as the two-step conditional certification procedure, is to facilitate notice to potential class members so they may have opportunity to opt in. See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989) ("These benefits [of class treatment] depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.").

The Court's apparent preference for speedy notice to potential class members finds additional support in the observation that a potential plaintiff's statute of limitations period is

calculated by reference to the date on which that plaintiff opts in to the FLSA class action. 29 U.S.C. § 256. Indeed, at least one court has reasoned that "conditional certification is not really a certification. It is actually the district court's exercise of its discretionary power, upheld in Hoffmann-La Roche . . . to facilitate the sending of notice to potential class members, and it is neither necessary nor sufficient for the existence of a representative action under the FLSA." Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 536 (3d Cir. 2012). Therefore, for purposes of determining the propriety of sending notice to potential class members and thereby creating opportunity for notice recipients to halt the ticking limitations clock, the court will exercise its discretion to authorize notice upon a showing of substantial evidence that members of the proposed class may qualify as employees under the FLSA.

Here, the named plaintiffs have proffered substantial evidence on the limited record presented to the court that they and other distributors who worked for defendants operated as defendants' employees. Plaintiffs set forth substantial evidence that, in practice, defendants' managers exerted sufficiently strict control over plaintiffs' workflow such that plaintiffs may qualify as employees under the Schultz factors. (See e.g., Rosinbaum Decl. ¶ 5–7, DE 23-2 at 3–4, (discussing Flowers's control over product prices, quantity to be delivered, and required protocols imposed upon distributors)). To be sure, defendants maintain that plaintiffs' account of Flowers's alleged control over distributors' workflow is inaccurate and unrepresentative of other distributors' experience. Nonetheless, for the sole purpose of determining the propriety of notifying other potential class members of the pendency of this action, evidence in the form of named plaintiffs' declarations is sufficient to justify a contingent assumption that plaintiffs will prevail in demonstrating their claimed status as employees under Schultz.

9

Additionally, plaintiffs have set forth substantial evidence that potential class members are "similarly situated" with respect to the claims at issue in this matter. First, Charles Rich ("Rich"), a Flowers executive whom the parties do not dispute bears responsibility for drafting the distributor agreements at issue in this case, stated at deposition that Flowers's distributor agreements vary in only minor details. (See Rich Dep. 162:17–20, DE 103-8 ("[W]hen you look at different versions of the distributor agreement, there are only minor changes.")). Therefore, even if plaintiffs personally have not reviewed the distributor agreements under which other distributors operate outside territory served by defendants' Wilmington warehouse, Rich's deposition provides sufficient evidence that named plaintiffs and other distributors were parties to a "manageably similar" distributor agreement. See Galvan, 2016 WL 6205783, at *1. Furthermore, if, following the completion of discovery, defendants determine that some opt-in plaintiffs operated pursuant to materially different distributor agreements, they may seek to sever the same individuals from the class through a motion for decertification. Id. at *2.

Second, plaintiffs have set forth substantial evidence, and defendants do not deny, that no potential plaintiff embraced within plaintiffs' proposed class definition ever received overtime pay for time worked in excess of 40 hours in a given week.

Third, plaintiffs have set forth substantial evidence that defendants subjected members of the proposed class to similar policies potentially facilitating supervision of or control over potential plaintiffs' job performance. For example, clauses within the distributor agreements directing plaintiffs to use "good industry practice" and "best efforts" to services defendants' customers embody one such policy. Specifically, the distributor agreements define these clauses to require

"standards . . . generally accepted and following in the baking industry, including, but not limited to, maintaining an adequate and fresh supply of [p]roducts . . .

10

soliciting all [o]utlets not being serviced, properly rotating all [p]roducts . . . promptly removing all stale [p]roducts . . . maintaining proper services and delivery to all [o]utlets requesting services, maintaining all equipment in a sanitary condition and in good safe working order, and operating the [d]istributorship in compliance with all applicable federal, state and local laws, rules, and regulations[.]

(DE 23-4 at 3). Where the record indicates that the foregoing requirements are common to all distributor agreements, it is readily apparent that proposed class members are similarly situated with respect to substantive requirements arising from the distributor agreements. Plaintiffs adequately have demonstrated that defendants required plaintiffs to use handheld computers either to monitor plaintiffs' sales and other local market information or to exert control over potential plaintiffs' job performance.

Defendants contend, however, that some aspects of the numerous extant distributor agreements are sufficiently dissimilar to defeat conditional certification. For example, defendants assert that some distributor agreements require distributors to operate a distributorship as a corporation, some contain arbitration agreements or other releases, and others expressly permit a distributor to hold defendants in breach of the distributor agreement. However, defendants have not at this juncture demonstrated that the any of foregoing differences establish a relevant dissimilarity among potential plaintiffs since none of the foregoing issues appears material to determining whether a given worker qualifies as an employee. Specifically, where a distributor's corporate structure, dispute resolution procedures, and contractual power to declare a breach of contract do not address any of the Schultz factors, defendants may not rely on the presence of such differences to defeat conditional certification. See Schultz, 466 F.3d at 304.

Similarly, defendants observe that some individuals who entered distributor agreements with defendants exercised their discretion differently than did the named plaintiffs. For example,

11

defendants cite declarations from Greg Collier ("Collier") and Clinton Dixon ("Dixon"), who also

work as distributors, wherein Collier and Dixon state that they are free to set their own work hours,

determine an order in which to serve clients, need not follow directions from defendants' managers,

and set their own customer services procedures. (DE 5, 6). The foregoing evidence may tend to

support defendants' contention on the merits that the distributor agreements create an independent

contractor relationship. However, as set forth above, plaintiffs adequately have demonstrated their

status as employees for purposes of this motion. Therefore, the only the relevant question at this

juncture is whether members of the proposed class are similarly situated, and the foregoing evidence

establishes only that Collier's and Dixon's subjective perception of their employment status differed

from plaintiffs' perceptions. Nothing in Collier's or Dixon's declarations suggests that the terms

of their distributor agreements or discretion afforded to them thereunder is materially broader than

discretion afforded plaintiffs. Thus, the foregoing evidence is not sufficient to defeat conditional

certification.

The remainder of defendants' arguments opposing class certification follow the same pattern

conflating the ultimate merits determination regarding plaintiffs' proper FLSA classification with

the pertinent question whether members of the proposed class are similarly situated. For example,

defendants contend that the distributor agreements afforded to distributors opportunity to solicit new

accounts with new customers, request promotional displays, bargain with customers for additional

shelf space, recommend new products, advertise using business cards, provide superior customer

service, trade territory with other distributors, employ helpers, set prices for cash accounts, and

otherwise control business expenses. Although any of the foregoing issues may be relevant under

Schultz in determining finally plaintiffs' employee status on the merits, plaintiffs have introduced

12

sufficient contrary evidence as set forth above to warrant a threshold finding that members of the class are similarly situated employees. Therefore defendants' arguments will be left for final resolution at a later stage in this case.

Finally, defendants oppose conditional certification based on defendants' intent to assert affirmative defenses under the motor carrier exemption, 29 U.S.C. § 213(b)(1) (providing that FLSA overtime provisions do not apply to motor carriers or motor private carriers as defined in 49 U.S.C. § 13102(14)–(15); see also Technical Corrections Act of 2008, Pub. L. No. 110–244, § 306(c), 122 Stat. 1572 (providing an exception to the motor carrier exemption for motor carriers who perform duties on motor vehicles weighing 10,000 pounds or less), and the outside sales exemption, 29 U.S.C. § 213(a)(1) (providing that FLSA overtime provisions do not apply to employees whose primary duty is to make sales). Defendants contend that where an individualized inquiry may be necessary to determine the frequency at which some potential plaintiffs drove vehicles weighing less than 10,000 pounds and whether some potential plaintiffs operated a distributorship primarily as a sales agency rather than as a delivery service, conditional certification is inappropriate.

The foregoing argument is unavailing because, as set forth above, even if potential plaintiffs' circumstances are not identical, conditional certification is appropriate where persons "raise a similar legal issue as to . . . nonpayment or minimum wages or overtime arising from at least a manageably similar factual setting[.]" Galvan, 2016 WL 6205783, at *1. In this case, some individualized inquiry may be necessary to determine whether the motor carrier and outside sales exemptions mitigate defendants' liability with respect to certain potential plaintiffs. Nonetheless, defendants have not cast doubt upon plaintiffs' showing that potential plaintiffs' factual setting in issue here is "manageably similar." See id. Therefore, where defendants oppose conditional

13

certification on the ground that some defenses may require a degree of individualized inquiry, defendants' opposition is unavailing.

B.     Notice of Class Action

Defendants object to certain statements contained in plaintiffs' proposed of notice of class action and request opportunity to meet and confer with plaintiffs so the parties jointly may agree upon an acceptable form of notice.  By way of their reply, plaintiffs have conceded that certain modifications to the proposed notice are acceptable.  Defendants' remaining objections do not merit further delay.  Accordingly, with deference to Federal Rule of Civil Procedure 1, and in recognition that plaintiffs' proposed notice is adequate as modified in accordance with plaintiffs' reply, the proposed notice is approved as follows.

First, as previously mentioned, plaintiffs concede that where currently the proposed notice states:

> In the lawsuit, Plaintiffs seek to recover overtime pay and to have distributors reclassified as employees of Franklin Banking Co. and Flowers or for Franklin Baking Co. and Flowers to change their treatment of distributors so that the companies treat them as independent contractors[,]

(DE 23-1 at 3), the notice should instead read:

> In the lawsuit, Plaintiffs seek to recover overtime pay and to have the court determine whether distributors should be classified as employees of [Franklin] and Flowers or independent contractors.

Therefore, plaintiffs must effect this substitution.

Second, plaintiffs concede that the caption featured in the proposed notice requires an update to reflect that the case was transferred from the Western District of North Carolina to this district. Additionally, plaintiffs concede that where the proposed noticed erroneously states that defendants

should have received overtime pay, the notice must be corrected to state that <u>plaintiffs</u> should have received overtime pay.  Therefore, plaintiffs must effect these corrections.

Third, plaintiffs concede the propriety of amending the notice to add at the end of the notice's section entitled "Legal Representation If You Join the Lawsuit" a sentence that reads "If you join the lawsuit, Plaintiffs' counsel will represent you unless you decide to hire your own attorney at your own expense."  This statement accurately informs potential plaintiffs of their right to hire independent counsel and reads in a neutral tone.  Therefore, it must be included as proposed.

Fourth, plaintiffs' request for a 90-day opt-in period is reasonable and plaintiffs' request for permission to send out reminder notices to the putative class after 45 and 75 days is also reasonable.  Therefore, plaintiffs' request for these conditions is granted.

Fifth, posting notice of this lawsuit inside Franklin's warehouses where potential plaintiffs may see the notice would likely advance the notice's purpose of ensuring that potential class members are made aware of their right to join this action.  Therefore, plaintiff's request for permission conspicuously to post notices in Franklin's warehouses is granted.

Finally, by the same document constituting their motion for conditional certification, plaintiffs moved the court compel production of identifying and contact information for defendants' distributors.  Therefore, the court construes relevant portions of the second numbered paragraph of plaintiffs' motion for conditional certification and judicial notice as a motion to compel production of documents, which motion is granted.  Defendants shall provide identifying and contact information for members of the collective class herein conditionally certified to plaintiffs within 10 days of the date of entry of this order by an electronic data file.  The data file shall include the names, last known mailing addresses, dates of employment, job title, respective warehouse, phone

15

numbers, email addresses, and last four digits of the social security numbers of all individuals who worked as a distributor for defendants any time during the three years preceding entry of this order.

C.      Motion to Compel

In their motion to compel, plaintiffs assert that defendants have not complied with plaintiffs' request to designate Shiver and Alexander as custodians of discoverable electronically stored information pursuant to Federal Rule of Civil Procedure 26 and the court's order regarding production of electronically stored information and paper documents.  (DE 82).  Federal Rule of Civil Procedure 26 provides:

> Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the  needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties resources, the importance of the discovery in resolving the issues, and whether the burden or expenses of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  "[D]iscovery rules are to be accorded a broad and liberal treatment to effect their purpose of adequately informing the litigants in civil trials." Herbert v. Lando, 441 U.S. 153, 177 (1979).  However, a litigant may not use discovery requests to annoy, embarrass, oppress, or cause an undue burden or expense to his opposing party.  See Fed. R. Civ.  P. 26(c)(1). Additionally, the court has "substantial discretion" to grant or deny motions to compel discovery. Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995).

In this matter, the parties jointly stipulated to an agreement regarding production of electronically stored information, which contemplated that the parties would disclose 10 individuals most likely to have discoverable electronically stored information in their possession ("custodians"). (DE 82).  In support of their motion to compel, plaintiffs direct the court's attention to exhibits

16

demonstrating that Shiver and Alexander took at least a degree of interest and involvement in Flowers's distributorship program and likely had a hand in setting company policy regarding the same. (See e.g., DE 108-2 (Shiver and Alexander discussing distributorship program via email)). Based upon these exhibits, plaintiffs move the court to compel Shiver's and Alexander's designation as custodians of electronically stored information, which will enable plaintiffs to discover documents in Shiver's and Alexander's possession.

Defendants oppose plaintiffs' request to designate Shiver and Alexander as custodians of discoverable electronically stored information on two grounds. First, defendants contend that the "apex" doctrine, which has not been adopted by the Fourth Circuit, mandates that high level executives who may be unlikely to have personal familiarity with the facts of the case are protected from discovery unless the party seeking discovery can show that an executive possesses "unique" personal knowledge of the facts in issue and the requested information cannot be obtained from alternative sources. See e.g., Performance Sales & Mktg., LLC v. Lowe's Companies, Inc., No. 5:07-CV-140-RLV, 2012 WL 4061680, at *1, *2–3 (W.D.N.C. Sept. 14, 2012); see also Smithfield Bus. Park, LLC v. SLR Int'l Corp., No. 5:12-CV-282-F, 2014 WL 547078, at *1, *2 (E.D.N.C. Feb. 10, 2014) (limiting discovery under the apex doctrine).

Defendants' appeal to the apex doctrine is problematic because courts applying the apex doctrine typically have done so to protect executives from the expense only of a deposition. See e.g., Serrano v. Cintas Corp., 699 F.3d 884, 900 (6th Cir. 2012) (describing the apex doctrine as "a doctrine that bars the deposition of high-level executives absent a showing of their 'unique personal knowledge' of relevant facts"); Smithfield Business Park, LLC v. SLR Intern. Corp., No. 5:12-CV-282-F, 2014 WL 547078, at *2 (E.D.N.C. Feb. 10, 2014) ("According to the apex doctrine, before

17

a plaintiff may depose a corporate defendant's high ranking officer, the plaintiff must show '(1) the executive has unique or special knowledge of the facts at issue and (2) other less burdensome avenues for obtaining the information sought have been exhausted.'"); Dyson, Inc. v. Sharkninja Operating LLC, No. 1:14-cv-0779, 2016 WL 1613489, at *1 (N.D. Ill. Apr. 22, 2016) ("[T]here is some doubt whether the apex doctrine even applies to document production, as all of the cases this Court reviewed on the issue were concerned with preventing depositions of high ranking corporate officials."); but see Assured Guar. Mun. Corp. v. UBS Real Estate Securities, Inc., Nos. 12 Civ. 1579 (HB)(JCF), 12 Civ. 7322 (HB)(JCF), 2013 WL 1195545, at *2–3 (S.D.N.Y. Mar. 25, 2013) (granting protective order on the ground that document production by two executives would be duplicative without reference to the apex doctrine or reliance upon the executives' status within the plaintiff's corporate hierarchy).

In no case of which the court is aware has the apex doctrine successfully been invoked to shield an executive from a request for production of documents. See Dyson, 2016 WL 1613489, at *2 (declining to apply the apex doctrine to quash a request for production of documents and holding that "[e]ven assuming that the doctrine applies [to document production], the burden on [a corporate party] for having to produce relevant emails is low, and [the corporate executives] have not articulated any reason why this email production would constitute an undue burden"). Therefore, even assuming without deciding that the apex doctrine may apply to requests for document production, it remains incumbent upon defendants to demonstrate that responding to a request for production of documents would constitute an undue burden. See Fed. R. Civ. P. 26(c)(1).

Turning now to defendants' remaining arguments in opposition to plaintiffs' motion to compel, defendants argue that any discoverable information Shivers and Alexander may possess

18

likely will constitute duplication of information already produced. Additionally, defendants contend that the cost of producing documents in Shivers's and Alexander's possession is disproportional to the needs of the case. In particular, defendants estimate that should the court grant plaintiffs' motion to compel, compliance will cost defendants approximately $230,000.00.

In this instance, the court lacks sufficient information to address these issues of duplication and proportionality. Therefore, the motion is held in abeyance. Notably, however, plaintiffs indicate their willingness to narrow the search terms implicated in their request for production of documents. (DE 120 at 2). Accordingly, the parties are directed to confer and attempt to settle upon an acceptable set of search terms. The parties shall then file a joint status report on the court's docket on or before March 10, 2017, to notice the court as to the outcome of such conference and the terms of any resulting agreement if one is reached. If an agreement is not reached, the parties additionally shall specify in the status report three alternative dates for a telephonic status conference pursuant to Federal Rule of Civil Procedure 16 further to discuss resolution of the instant discovery dispute. At conference, the court will entertain proposals the parties believe may be useful in narrowing the scope of plaintiffs' request for production in a manner that will satisfy plaintiffs' reasonable desire to obtain discoverable information while minimizing cost to defendants.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED as follows:

1.    Platintiffs' motion for conditional certification of one class is GRANTED on the terms set forth herein.

2.    The class shall include:

> All persons who are or have performed work as distributors for defendants under a distributor agreement with Franklin Baking Company, LLC or a

similar written contract entered into during the period commencing three years prior to the commencement of this action through May 15, 2017, and who file a consent to join this action pursuant to 29 U.S.C. 216(b).

3. No subclasses shall be certified, although the parties may raise a motion for certification of subclasses if and when they deem appropriate.

4. Plaintiffs' proposed notice as modified in accordance with this order is APPROVED, and the opt-in period shall extend to May 30, 2017. Defendants are DIRECTED to provide contact information for all potential class members in accordance with this order no later than March 10, 2017.

5. The parties are DIRECTED to confer and file a joint status report on the docket on or before March 10, 2017, consistent with this order.

SO ORDERED, this the 1st day of March, 2017.

_____
LOUISE W. FLANAGAN
United States District Judge