**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| BOBBY JO ROSINBAUM and<br>ROBERT WILLIAM MORGAN, JR.,<br>*individually and on behalf of all similarly*<br>*situated individuals*,<br><br>        Plaintiffs,<br><br>    v.<br><br>FLOWERS FOODS, INC., *and*<br>FRANKLIN BAKING CO., LLC,<br><br>        Defendants. | Civ. A. No. 7:16-cv-00233-FL<br><br>**MEMORANDUM OF LAW IN SUPPORT**<br>**OF JOINT MOTION FOR**<br>**PRELIMINARY APPROVAL OF CLASS**<br>**& COLLECTIVE ACTION**<br>**SETTLEMENT** |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................... 3

III.  PROCEDURAL BACKGROUND ....................................................................... 5

    a.    The Litigation .......................................................................................... 5

    b.    Settlement Efforts ................................................................................... 7

    c.    Settlement Agreement ............................................................................ 8

        i.    Monetary Terms: .............................................................................. 8

        ii.   Non-Monetary Terms ...................................................................... 9

            Arbitration Agreement Option ...................................................... 10

            Buy Back Option .......................................................................... 11

            Distributor Review Panel ............................................................. 11

            Distributor Advocate Position ...................................................... 12

            Additional Program Changes ........................................................ 12

IV.   CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE .................... 13

    a.    The Class Satisfies the Numerosity Requirement. .................................. 14

    b.    The Class Satisfies the Commonality Requirement ................................ 14

    c.    Plaintiffs Meet the Typicality Requirement ........................................... 15

    d.    Plaintiffs Satisfy Adequacy Requirement. ............................................. 16

    e.    The Class Satisfies the Criteria of Rule 23(b). ....................................... 17

V.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE ............... 18

        A.    Class representatives and Class Counsel have adequately represented the
            class and support approval of the proposed settlement. ........................... 20

        B.    The Parties reached the proposed settlement through arms-length
            negotiation following years of extensive discovery, briefing, and litigation.
            21

        C.    The relief provided in the proposed settlement is adequate under all
            relevant factors. ..................................................................................... 24

        i.    The Relative Strength of Plaintiffs' Case and Existence of Difficulties of
            Proof or Strong Defenses Support Approval. ................................. 24

        ii.   The Anticipated Duration and Expense of Litigation. .................... 25

        iii.  The terms of the agreed-upon attorneys fees are fair. .................... 26

     D.  The proposed settlement treats all class members equitably relative to each other. ................................................................................................................. 26

     E.  The Settlement is Also Reasonable Under the FLSA. .............................. 27

VI.    PLAINTIFFS' PROPOSED CLASS NOTICE PROGRAM MEETS THE REQUIREMENTS OF RULE 23(e) ........................................................................... 28

VII.   CAFA NOTICE OF THE SETTLEMENT IS REQUIRED ............................................. 30

VIII.  THE COURT SHOULD SET A FINAL APPROVAL HEARING ................................ 30

IX.    CONCLUSION ............................................................................................................. 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beaulieu v. EQ Indus. Servs., Inc.,*
2009 WL 2208131 (W.D.N.C. July 22, 2009) ........................................................22

*Bokanoski v. Flowers,*
3:25-cv-00021 (D. Conn.) ........................................................................................22

*Carr, et al. v. Flowers Foods, Inc. et al.,*
Case 2:15-CV-06391 ..............................................................................................7, 8

*Clark v. Duke Univ.,*
No. 1:16-CV-10442019, 2019 U.S. Dist. LEXIS 105696 (M.D.N.C. June 24,
2019) ........................................................................................................................27

*DeGidio v. Crazy Horse Saloon & Rest., Inc.,*
No. 4:13-CV-02136-BHH, 2017 WL 5624310 (D.S.C. Jan. 26, 2017), *aff'd
and remanded sub nom. Degidio v. Crazy Horse Saloon & Rest. Inc.*, No. 17-
1145, 2018 WL 456905 (4th Cir. Jan. 18, 2018) ..................................15, 16, 17, 18

*DeWitt v. Darlington Cty., S.C.,*
No. 4:11-CV-00740-RBH, 2013 WL 6408371 (D.S.C. Dec. 6, 2013) ...................13

*Duvall v. O'Malley,*
2016 WL 3523682 (D. Md. June 28, 2016) ...........................................................24

*Evans v. Jeff D.,*
475 U.S. 717 (1986) ................................................................................................19

*Flinn v. FMC Corp.,*
528 F.2d 1169 (4th Cir. 1975) ....................................................................20, 22, 24

*Hall v. Higher One, Inc.,*
2016 WL 5416582 (E.D.N.C. September 26, 2016) ...............................................28

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
855 F. Supp. 825 (E.D.N.C. 1994) .........................................................................19

*In re Jiffy Lube Sec. Litig.,*
927 F.2d 155 (4th Cir. 1991) ......................................................19, 22, 25, 31

*Kirven v. Cent. States Health & Life Co.,*
2015 WL 1314086 (D.S.C. Mar. 23, 2015) ...............................................20, 22, 25

*Lace v. Fortis Plastics, LLC*,
    No. 3:12-CV-363-JD, 2015 WL 1383806 (N.D. Ind. Mar. 24, 2015) ....................................30

*Lomascolo v. Parsons Brinckerhoff, Inc.*,
    2009 WL 3094955 (E.D.Va. Sept. 28, 2009)..................................................................27, 28

*Lynn's Food Stores, Inc. v. United States*,
    679 F.2d 1350 (11th Cir.1982).: (1) ...............................................................................27, 28

*In re MicroStrategy Inc. Securities Litigation*,
    148 F. Supp.2d 654 (E.D. Va. 2001) ............................................................................ *passim*

*Muhammad v. Nat'l City Mtg., Inc.*,
    2008 WL 5377783 (S.D.W.V. Dec. 19, 2008) ..............................................................21, 22

*Neff, et al. v. Flowers Foods, Inc., et al.*,
    Case 5:15-cv-00254-gwc .......................................................................................................7, 8

*Noll, et al. v. Flowers Foods, Inc., et al.*,
    Case 1:15-cv-00493 ...............................................................................................................7, 8

*Oaks v. Moss*,
    No. 3:15-cv-00196, 2015 WL 5737595 (N.D. Ind. Sept. 29, 2015) .......................................30

*Ohayon v. Hertz Corp.*,
    2012 WL 4936058 (N.D. Cal. Oct. 16, 2012).........................................................................30

*Patel v. Barot*,
    15 F. Supp.3d 648 (E.D. Va. 2014) ........................................................................................27

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)................................................................................................................29

*Rehberg v. Flowers Baking Co. of Jamestown, LLC*,
    No. 3:12-CV-00596-MOC, 2015 WL 1346125 (W.D.N.C. Mar. 24, 2015) ....................15, 16

*Reynolds v. Fid. Invs. Institutional Operations Co.*,
    No. 1:18-CV-423, 2020 WL 92092 (M.D.N.C. Jan. 07, 2020) ..............................................27

*Saman v. LBDP, Inc.*,
    2013 WL 2949047 (D. Md. June 13, 2013).............................................................................27

*Sims v. BB&T Corp.*,
    No. 1:15-CV-732, 2019 WL 1995314 (M.D.N.C. May 06, 2019) .........................................26

*South Carolina Nat'l Bank v. Stone*,
    139 F.R.D. 335 (D.S.C. 1991) ...............................................................................................19

*Soutter v. Equifax Info. Servs., LLC*,
  498 F. App'x 260 (4th Cir. 2012) .........................................................................15

*Stanley v. Cent. Garden & Pet Corp.*,
  891 F. Supp. 2d 757 (D. Md. 2012) .......................................................................14

*Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*,
  No. 3:08-CV- 00271-JFA, 2012 WL 4061537 (D.S.C. Sept. 14, 2012) ...............14, 20, 22, 31

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) .....................................................................................14, 15

**Statutes**

28 U.S.C. §1715(b) ...................................................................................................30

29 U.S.C. § 201, *et seq.* ..............................................................................................5

29 U.S.C. § 207(a)(1) ...............................................................................................24

29. U.S.C. FLSA § 216(b) .................................................................................5, 8, 18

N.C. Gen. Stat §§ 95-25.1, *et seq* ..............................................................................5

**Other Authorities**

DICKSTEIN DISPUTE RESOLUTION,
  *https://dicksteindisputeresolution.com/cv_general.pdf* .........................................7

Fed. R. Civ. P. 23 ............................................................................................. *passim*

Fed. R. Civ. P. 23(c)(2)(B) .......................................................................................28

Fed. R. Civ. P. 23(e) ...............................................................................18, 28, 29, 30

Fed. R. Civ. P. 23(e)(1) ...........................................................................................28

Fed. R. Civ. P. 23(e)(2) ...........................................................................................20

Fed. R. Civ. P. 23(h) ...............................................................................................26

## I.  INTRODUCTION

Plaintiffs Bobby Jo Rosinbaum and William Robert Morgan, Jr. (collectively referred to as "Class Representatives," "Plaintiffs," or "Named Plaintiffs"), on behalf of themselves and any business entities through which they operated, and on behalf of Settlement Class Members and Flowers Foods, Inc. ("Flowers Foods") and Franklin Baking Co., LLC. ("Franklin") (collectively, "Defendants"), submit this Memorandum of Law in support of their Joint Motion for Preliminary Approval of the Class & Collective Action Settlement.

After over four years of hard-fought litigation involving significant amounts of discovery, three separate in-person, multi-day mediation sessions with months of on-going negotiations between, all of which was facilitated by a highly-skilled mediator, and extensive arms-length negotiations between experienced counsel, the Parties have reached a settlement of this case, embodied in a comprehensive Settlement Agreement.[1] The settlement provides substantial monetary compensation to all Fair Labor Standards Act ("FLSA") Collective Members and other Settlement Class Members as well as meaningful enhancements to the independent distributor program for current Franklin distributors.

As discussed more fully below, the settlement creates a $8.3 million common fund that provides: (i) payments to Settlement Class Members; (ii) Service Awards to each of the Named Plaintiffs in the amount of $10,000 each; (iii) Attorneys' Fees and Costs to Class Counsel (except for costs associated with notice and settlement administration, which shall be paid separately by Defendants); and (iv) additional payments of $3,500 each to current distributors who are

---

[1] FLSA Collective Members are Named Plaintiffs and those 89 individuals who opted in to the FLSA collective action and remain plaintiffs in this case. Certain other capitalized defined terms may be used herein as well, which are more fully defined in the "Definitions" section of the Class and Collective Action Settlement Agreement and Release ("Settlement Agreement") attached hereto as Exhibit A.

Settlement Class Members who elect to arbitrate applicable disputes and timely execute and return an Amendment to their Distributor Agreement and the attached Arbitration Agreement referenced and incorporated therein.

In addition, the Settlement also contains several non-monetary terms. These include, for example, a Buy Back Option whereby Settlement Class Members who are current distributors are eligible to have their territories repurchased by Franklin; creation and staffing of a Distributor Advocate position, who oversees an internal, alternative dispute resolution process for independent distributors; creation and implementation of a Distributor Review Panel, which provides for an internal review process for resolution of contract-related disputes; formalizing distributors' rights to have discussions with appropriate management personnel within their accounts who have authority to engage in such discussions regarding product placement and days of service; and a process through which distributors can raise the issue of non-profitable accounts with Franklin, among others.

The Parties view the Settlement as a desirable alternative to the uncertainty, expense, and delay that would result from further litigation. At the same time, Plaintiffs' Counsel believes the settlement is in the best interests of FLSA Collective and other Settlement Class Members, and the Parties believe it should be approved by the Court as fair, reasonable, and adequate in all respects. As discussed below, the settlement unquestionably satisfies the Fourth Circuit's fairness and adequacy tests. As such, the Parties respectfully request that the Court issue an order: (1) granting preliminary approval of the proposed settlement; (2) preliminarily certifying a class under Fed. R. Civ. P. 23, for settlement purposes; (3) appointing Shawn J. Wanta of Baillon Thome Jozwiak & Wanta LLP, Susan Ellingstad of Lockridge Grindal Nauen, PLLP, and J. Gordon Rudd of Zimmerman Reed LLP as Class Counsel; (4) approving Atticus Administration as the Settlement

Administrator; (5) approving the form, content, and method and distribution of the Settlement Notice to Class Members; (6) directing that notice under the Class Action Fairness Act of 2005 ("CAFA") be issued to appropriate state and federal officials; (7) setting a briefing schedule for: the joint motion for final approval, Class Counsel's motion for attorneys' fees, and Named Plaintiffs' motion for Service Awards; and (8) scheduling a fairness hearing to consider final approval of the proposed settlement.

## II.    <u>FACTUAL BACKGROUND</u>

Flowers Foods is headquartered in Thomasville, Georgia, and has numerous, wholly-owned subsidiaries, including Franklin. (Doc. 140, at pp. 2–4.) Franklin bakes and produces various baked goods, including packaged breads, rolls and cakes. (*Id.*) Franklin contracts with independent distributors, like Plaintiffs, who purchase distribution rights to sell and distribute products to customers in a defined territory. Distributors enter into Distributor Agreements with whereby they are classified as independent contractors. (*Id.*)

Plaintiffs allege that distributor job responsibilities and the reality of the distributors' working relationship with Defendants demonstrate that they are employees of Defendants. For example, Plaintiffs allege that distributors are required to arrive at specified warehouses at specified times to stock their delivery vehicles with Defendants' products. (Doc. 140, at pp. 2-5.) Plaintiffs also allege that distributors are responsible for delivering these products to customers at times and places specified by Defendants. (*Id.*) Moreover, Plaintiffs assert that they and other distributors had no ownership or entrepreneurial influence over their day-to-day activities, including sale prices, shelf space within retailer locations, orders, product selection, schedules, delivery locations and the like. (*Id.*)

Defendants deny these allegations, contend that distributors are responsible for controlling the manner, method, and means of performance of their distributorship duties, and contend that

distributors have discretion over production selection, orders, price, shelf space, services times and the like, although the amount of discretion they have may vary depending on the type of account at issue. (*Id.*)

Distributors are responsible for the expenses they incur in connection with the operation of their distributorships. Some of these expense are deducted from distributors' weekly settlement statements, which are provided to distributors on a weekly basis. These settlement statements outline the balance of sales to customer accounts and the various deductions, and indicate the balance that Franklin pays distributors (or that distributors may owe Franklin in certain circumstances). (Doc. 306.) Examples of such deductions include: shrink charges; stale adjustments; truck repairs; warehouse fees; administrative fees; beepers; and temp services fees (*Id.*)

Because Flowers classifies distributors as independent contractors, they are not paid overtime for hours worked over 40 in a workweek. (Doc. 140, pp. 2, 4.) Accordingly, Plaintiffs seek damages for unpaid overtime wages for all hours worked over forty per week during the relevant period under the FLSA. Plaintiffs also seek reimbursement for the following deductions that Plaintiffs allege were deducted unlawfully under the North Carolina Wage and Hour Act ("NCWHA"): shrink charge; stale adjustment; truck repair; truck tax, tag, license, and fee; warehouse fee; administrative fee; beepers; temporary service fee; and miscellaneous adjustments. (Doc. 306.) At all times, Defendants have denied Plaintiffs' allegations, denied that they violated the law in any way, and denied that Plaintiffs or the individuals they seek to represent are entitled to the damages they seek.

## III. PROCEDURAL BACKGROUND

### a. The Litigation

Plaintiffs are current and former distributors who contracted with Franklin. On December 1, 2015, Plaintiffs filed this Action against Defendants on behalf of themselves and a class of distributors in North Carolina with Franklin. Plaintiffs allege violations of the FLSA, 29 U.S.C. § 201, *et seq.*, and the NCWHA, N.C. Gen. Stat §§ 95-25.1, *et seq.*

Each of Plaintiffs' claims are premised on the allegation that Franklin improperly classifies its distributors as independent contractors rather than employees. Plaintiffs claim damages in the form of unpaid overtime for hours worked over forty in a week under the FLSA as well as alleged unlawful deductions under the NCWHA.

On March 1, 2017, this Court granted Plaintiffs' motion for conditional certification of this case pursuant to § 216(b) of the FLSA. (Doc. 140.) The FLSA Collective Class was defined as

> All persons who are or have performed work as "Distributors" for Defendants under a "Distributor Agreement" with Franklin Baking Company, LLC or a similar contract that they entered into during the period commencing three years prior to the commencement of this action through the close of the Court-determined opt-in period and who file a consent to join this action pursuant to 29 U.S.C. § 216(b)."

(*Id.*)

Following conditional certification, the Parties engaged in nearly three years of discovery involving extensive document productions totaling hundreds of thousands of pages, hundreds of interrogatories and requests for admissions, and numerous depositions, including extensive 30(b)(6) depositions of both Defendants. After the completion of discovery, Defendants moved to decertify the FLSA collective action (Docs. 303, 304), and Plaintiffs moved for class certification (Docs. 305, 306).

More specifically, on January 31, 2019, Plaintiffs moved for class certification pursuant to Federal Rule of Civil Procedure Rule 23 ("Rule 23") on NCWHA deduction claims, seeking to certify a class defined as: "All persons who, at any time from December 1, 2013 continuing through entry of judgment in this case, worked as Distributors for Flowers Foods, Inc. and/or Franking Baking Co., LLC in the state of North Carolina and were classified as independent contractors under their distribution agreements." (Doc. 306, at p. 25.)

Defendants opposed Rule 23 certification arguing that Plaintiffs reliance on the right to control test to determine employment status under the NCWHA was misplaced. However, even if the right to control test governed, which Defendants denied, the record showed dissimilarities among the proposed class impeding generation of common answers. (Doc. 335.) Furthermore, Defendants argued that in addition to the dissimilarities revealed through application of the economic realities test, common issues do not predominate on the NCWHA claims, including application of the franchise defense, determination of who received "wages" both in terms of the type of compensation paid and the identity of the individual actually performing services, and analysis of the varying forms, authorizations, and facts applicable to each actual deduction, among others. (*Id.*)

Also, on January 31, 2019, Defendants moved to decertify the FLSA collective action on the grounds that individualized—and not representative—proof was required to determine whether all member of the FLSA collective action were "employees" under the FLSA or whether they were otherwise exempt under the fact-based Outside Sales or Motor Carrier Act exemptions. (Doc. 304.) Plaintiffs opposed decertification arguing there was common evidence establishing that members of the FLSA Collective action were "employees" under the FLSA or not otherwise exempt. (Doc. 336.) Both Motions remain pending.

Having extensively litigated the case, and only following exhaustive briefing on Class Certification and Decertification of the FLSA Collective, the Parties requested, and this Court granted, a stay of the case in order for the Parties to engage in arms-length negotiations.

**b.      Settlement Efforts**

The Parties have engaged in significant settlement discussions for nearly one year. On May 5–6, 2019, the Parties held their first formal mediation. The Parties engaged Michael E. Dickstein of Dickstein Dispute Resolution to facilitate and assist in their arms-length negotiations during this session. Mr. Dickstein is a highly-skilled mediator who has mediated more than 600 class and collective actions across North America.[2]

This was an omnibus mediation covering this Action*, Neff, et al. v. Flowers Foods, Inc.*, *et al.*, Case 5:15-cv-00254-gwc, pending in the United States District Court for the District of Vermont, *Carr, et al. v. Flowers Foods, Inc. et al.*, Case 2:15-CV-06391, pending in the United States District Court for the Eastern District of Pennsylvania, and *Noll, et al. v. Flowers Foods, Inc., et al.*, Case 1:15-cv-00493, pending in the United Stated District Court for the District of Maine. Each of these cases involves the threshold issue of employment classification of distributors as well as claims for overtime and unauthorized deductions under the FLSA and applicable state laws. Moreover, Plaintiffs' Counsel in this Action also represent the plaintiffs in *Neff*, *Noll*, and *Carr*. While the time allocated to mediation included all four cases, the Parties negotiated and evaluated the claims asserted, and defenses available, in each case individually.

The Parties' second mediation session was on June 13–14, 2019. After two days of negotiations, the Parties were still unable to reach a compromise. The Parties, however, did agree to continue negotiations through Mr. Dickstein even after leaving this second mediation session.

---

[2] *See* DICKSTEIN DISPUTE RESOLUTION, *https://dicksteindisputeresolution.com/cv_general.pdf.*

The Parties' discussions and negotiations continued over multiple conference calls and emails, ultimately resulting in the Parties reaching an agreement regarding the component of settlement involving alternate dispute resolution (arbitration). With the newfound momentum, the Parties agreed to participate in mediation with Mr. Dickstein on December 9, 2019. It was only after this third, in-person mediation that the Parties were able to come to a comprehensive agreement.[3] The key terms of the Settlement Agreement entered into by the Parties in this Action are detailed below.

### c. Settlement Agreement

The Settlement Agreement provides substantial monetary and non-monetary relief to Plaintiffs and those they seek to represent. Specifically, the following persons are eligible to participate in the settlement. First, any individual who operated under a Distributor Agreement with Franklin who operated in North Carolina ("Class Members"). Next, the Settlement also covers those 89 individuals, in addition to the Named Plaintiffs, who under § 216(b) of the FLSA, filed in this Action signed, timely, and valid opt-in consent to join forms and whose participation and claims have not since been dismissed ("FLSA Collective Members").

### i. *Monetary Terms:*

The settlement provides significant monetary relief to participating Class and FLSA Collective Members (hereinafter referred to as "Settlement Class Members" or "Settlement Class"). Specifically, Defendants have agreed to create a total settlement fund of $8.3 million, which provides: (i) payments to Settlement Class Members; (ii) Service Awards to each of the Named Plaintiffs in the amount of $10,000 each, subject to Court approval; (iii) attorneys' fees and expenses to Class Counsel (except for costs associated with notice and settlement administration, which shall be paid separately by Defendants), also subject to court approval; and

---

[3] While the Parties agreed to terms of settlement in this Action as well as the *Neff* and *Carr* cases, they did not reach an agreement related to the *Noll* case, which the parties continue to litigate.

(iv) additional payments of $3,500 each to current distributors who are Settlement Class Members who accept, sign and return to the Settlement Administrator within the Notice Period the Arbitration Election Form and the Amendment and accompanying Arbitration Agreement. The Settlement Notices discussed below describe the process by which a Class Member, including a Class Member who is also an FLSA Collective Member (but not a Named Plaintiff), may exclude themselves from the Settlement and, for those Class Members who are also FLSA Collective Members, how they may withdraw; and the process by which a pure FLSA Collective Member (who is not also a Class Member or Named Plaintiff) may withdraw. As a part of the settlement, no Settlement Class Member (*i.e.* participating FLSA Collective and/or Class Member who does not exclude themselves and/or withdraw) will be required to submit an additional claim form to receive a share of the Settlement Fund.

The Settlement Fund shall be allocated based upon an allocation formula that recognizes the pro rata alleged damages of each Settlement Class Member, as more specifically discussed in the Settlement Agreement. However, Settlement Class Members who operate multiple territories shall collect monies allocated to alleged overtime on only one territory.

The $3,500 payment for each current distributor Settlement Class or FLSA Collective Member who elects to "Not Accept" the Amendment and accompanying Arbitration Agreement with class action waiver shall be returned to the Settlement Fund for re-allocation among existing Settlement Class Members. All allocations will be performed solely by Class Counsel according to a set formula. In other words, Settlement Class Members who do not choose to arbitrate applicable claims will still realize an increased monetary award in the form of a higher pro rata distribution.

### ii. *Non-Monetary Terms*

The Settlement also contains several significant non-monetary terms and changes to the

independent distributor model used at Franklin, which were negotiated with the assistance of the mediator. These include: (1) offering Settlement Class Members who are current distributors with an option to enter into an Amendment and Arbitration Agreement in exchange for an additional $3,500; (2) offering Settlement Class Members who are current distributors a Buy Back Option; (3) implementation of a Distributor Review Panel; (4) creation of a Distributor Advocate position; and (5) additional program changes, all of which are discussed more fully below.

**Arbitration Agreement Option**

As part of the Settlement, current distributors have the option to voluntarily enter into an Amendment to the Distributor Agreement, which adds alternative dispute procedures and incorporates an Arbitration Agreement and a class action waiver. Distributors are not required to sign the Arbitration Agreement in order to receive their full settlement amount. They will receive their full settlement award whether or not they sign the Arbitration Agreement. This is purely voluntary, and current distributors do not need to agree to arbitration as a condition of participating in the settlement. If distributors do elect this option, in exchange for execution of this Amendment and Arbitration Agreement, they will receive an additional payment of $3,500. Under this Arbitration Agreement, Flowers agrees to pay for all costs and fees typically associated with arbitration, subject to the arbitrator's ability to award fees and costs to the prevailing party to the same extent such relief could be awarded in court. Further, under the Arbitration Agreement, distributors can receive the same damages they could otherwise receive in court—there are no limitations on the same. This Amendment and Arbitration Agreement is explained more fully in the Arbitration Agreement Packet attached to the Settlement Agreement and included with Notices sent to Class and FLSA Collective Members who are current distributors.

If current distributors do not accept arbitration, they will still participate in the Settlement and receive their monetary Settlement allocation and the non-monetary relief, but they will not

receive the additional $3,500 payment, and the Amendment to the Distributor Agreement incorporating such Arbitration Agreement will not apply to them. Any refused $3,500 payments will not revert to Defendants, and instead will be redistributed to increase the pro rata shares of all Settlement Class and FLSA Collective Members, including those class members who refused the Arbitration payment.

**Buy Back Option**

As a part of the Settlement, Franklin will also buy back the territory (or territories) of any Settlement Class Member who is a current distributor for an amount equal to ten (10) times the territory's weekly branded sales calculated over a 52-week average ("Buy Back Option"). The timing and order of such Buy Back Option is set forth in the Settlement Agreement and explained in the Settlement Notices for current distributors.

**Distributor Review Panel**

Defendants will establish and use a Distributor Review Panel at Franklin. As more fully explained in Exhibit 8 to the Settlement Agreement, the Distributor Review Panel is an internal dispute resolution process whereby a distributor may appeal to an internal review panel for resolution of contract-related disputes, such as whether a breach of contract notice was properly issued or whether the distributor failed to comply with good industry practice. The Panel will be charged with analyzing the dispute between the complainant-distributor and the bakery and rendering a decision based on its findings. The Panel will be composed of three (3) distributors who are not from the complainant-distributor's warehouse; a member of Franklin's sales management who is not involved with overseeing Franklin's business relationship with the complainant-distributor; and a representative from the corporate distributor relations department who has not been involved in advising Franklin on the matter under review by the Panel. The Panel

program provides an efficient and fair process for resolving independent distributor disputes internally.

**Distributor Advocate Position**

As a part of the settlement, a Distributor Advocate position will be made available to distributors of Franklin. The Distributor Advocate will be responsible for addressing distributor issues that cannot be resolved at the local level. The Distributor Advocate will represent distributor interests and seek to resolve outstanding issues with Franklin management and the distributor.

The Distributor Advocate will be certified by the International Ombudsman Association. Where practicable, the program will operate in accordance with the International Ombudsman Association Standards of Practice ("Standards") and the organization's Code of Ethics.[4]

**Additional Program Changes**

The parties also negotiated several additional changes providing distributors more discretion over pricing, product placements, and service windows; greater ability to address unprofitable accounts and additional product orders; and increase communication between distributors and Franklin management. These enhancements, which are discussed fully in Exhibit 7 of the Settlement Agreement, provide tangible benefits to current distributors and represent material changes to the relationship between distributors and Franklin. These changes provide additional, material consideration that support the terms of the Settlement Agreement, including the release of claims therein.

---

[4] For example, the Distributor Advocate will not maintain confidentiality as suggested by the International Ombudsman Association because the distributor's identity must be shared with management in order to understand the situation and each party's business interests.

## IV.   **CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE**

Where the Parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement. "To approve a class action settlement, a court must ensure that the interests of all class members have been protected, and the court must be convinced that the settlement is 'fair, reasonable, and adequate.'" *DeWitt v. Darlington Cty., S.C.*, No. 4:11-CV-00740-RBH, 2013 WL 6408371, at *3 (D.S.C. Dec. 6, 2013) (quoting *Wineland v. Casey's Gen. Stores, Inc.,* 267 F.R.D. 669, 676 (S.D. Iowa 2009)).

Class certification is appropriate here, and Defendants consent to certification solely for the purposes of settlement. Granting class certification for purposes of settlement approval will allow notice of the proposed settlement to issue so that Class Members can be informed of the existence and terms of the proposed settlement, of their right to be heard on its fairness, of their right to opt-out, and of the date, time, and place of the fairness hearing.

For settlement purposes only,[5] the Parties requests that the Court provisionally certify the following Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure: Any individual who, either individually or through a business entity, was a party to a Distributor Agreement with Franklin operating in North Carolina between December 1, 2013 and May 21, 2019.

Plaintiffs believe the Settlement Class meets the requirements of Rule 23(a), which provides that: one or more members of a Class may sue or be sued as representative parties on behalf of all only if: (1) the Class is so numerous that joinder of all members is impracticable, (2)

---

[5] Defendants agree to class certification only for settlement purposes and without prejudice to their right to oppose class certification if the Settlement is not ultimately approved.

there are questions of law or fact common to the Class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the Class, and (4) the representative parties will fairly and adequately protect the interests of the Class. The Class must also meet one of the requirements of Rule 23(b). Here, the Settlement Class meets the requirements of 23(b)(3) because Plaintiffs believe questions of law or fact common to the members of the Class predominate over any individual questions, and a class action is a superior method of resolving this dispute. Accordingly, the Court should certify this Class for settlement purposes only.

      **a.     The Class Satisfies the Numerosity Requirement.**

Rule 23(a)(1) requires that the Class be so numerous that joinder of all members is impracticable. The Class here consists of approximately 250 current and former Distributors of Franklin in North Carolina. Courts in the Fourth Circuit have certified Classes containing far fewer individuals. *See, e.g.*, *Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*, No. 3:08-CV- 00271-JFA, 2012 WL 4061537, at *1 (D.S.C. Sept. 14, 2012) ("Although there is no specific rule on how many members a class must have, the Fourth Circuit has indicated that a class with over thirty members justifies a class.") (citing *Williams v. Henderson,* 129 F. Appx. 806, 811 (4th Cir. 2005)); *Stanley v. Cent. Garden & Pet Corp.*, 891 F. Supp. 2d 757, 770 (D. Md. 2012) ("Classes of as few as 25 to 30 have been found to raise [ ] the presumption that joinder would be impracticable.") (internal quotation omitted). Accordingly, the Court should find that the numerosity requirement is met.

      **b.     The Class Satisfies the Commonality Requirement.**

Rule 23(a)(2) requires the party seeking certification to show that there are questions of law or fact common to the Class. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). This means that the Class Members' claims "must depend on a common contention... of such a nature that it is capable of class-wide resolution—which means that determination of its truth or

falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Here, Plaintiffs believe the primary questions central to class-wide resolution are whether Defendants improperly classified Distributors as independent contractors and whether Defendants took improper deductions from Plaintiffs and other distributors in violation of North Carolina law. Courts in the Fourth Circuit have found that the question of whether workers are properly classified as employees or independent contractors is by itself a factual and legal issue that can satisfy the commonality requirement of Rule 23(a). *See, e.g., DeGidio v. Crazy Horse Saloon & Rest., Inc.*, No. 4:13-CV-02136-BHH, 2017 WL 5624310, at *11 (D.S.C. Jan. 26, 2017), *aff'd and remanded sub nom. Degidio v. Crazy Horse Saloon & Rest. Inc.*, No. 17-1145, 2018 WL 456905 (4th Cir. Jan. 18, 2018) (citing *In re Penthouse Executive Club Comp. Litig.*, No. 10-cv-1145-KMW, 2014 WL 185628, at *3 (S.D.N.Y. Jan. 14, 2014)) ("Plaintiffs' common factual allegations and a common legal theory—that Defendants violated federal and state law by misclassifying them as independent contractors, failing to pay them wages, improperly requiring them to pay fees and improperly withholding their tips—predominate over any factual or legal variations among class members.")); *Rehberg v. Flowers Baking Co. of Jamestown, LLC*, No. 3:12-CV-00596-MOC, 2015 WL 1346125, at *8 (W.D.N.C. Mar. 24, 2015) ("Accordingly, the court finds that for Plaintiff's misclassification claim, there is a question common to all putative class members that can be resolved 'in a single stroke' and that sufficient common evidence exists to satisfy the commonality element of Rule 23."). Accordingly, the Court should find that the commonality factor is satisfied.

### c. Plaintiffs Meet the Typicality Requirement.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the Class. Typicality requires that the representative plaintiff possess the same interest and suffer the same injury as the Class Members. *Souter v. Equifax Info. Servs.,*

*LLC*, 498 F. App'x 260, 264 (4th Cir. 2012) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982)). Plaintiffs believe that their claims arise from the same factual and legal basis as those of the putative Class members. Plaintiffs believe the facts show that all members of the putative Class, work as "Distributors" for Franklin, signed substantially the same "Distributor Agreement," were subject to the same policies and requirements, and had the same deductions taken out of their settlements on a weekly basis. Plaintiffs believe this is sufficient to show that their claims are reasonably co-extensive with the claims of the absent class members, and the Court should therefore find that the typicality requirement is met. *See, e.g., Rehberg*, 2015 WL 1346125, at \*11.

        **d.**      **Plaintiffs Satisfy Adequacy Requirement.**

       Finally, Rule 23(a)(4) requires the representative parties will fairly and adequately protect the interest of the class. *DeGidio*, 2017 WL 5624210, at \*13. "Adequate representation may be presumed in the absence of any evidence that named plaintiffs have a conflict of interest with other class members, or that counsel are unqualified." *Id.* (citing *Matthews v. Buel, Inc.*, No. 11-162, 2012 WL 1825273 (D.S.C. May 18, 2012) ("Absent contrary proof, class counsel are presumed competent and sufficiently experienced to prosecute the action on behalf of the class."); 3 Conte & Newberg, NEWBERG ON CLASS ACTIONS § 7:24)). Here, Plaintiffs suffered the same injury and share the same interests as the putative class Members. Plaintiffs have kept abreast of the litigation, assisted in discovery, and willingly agreed to submit to a deposition. Accordingly, the Court should find that Plaintiffs are and have been adequate representatives of the class.

       In addition, Plaintiffs' Counsel in this case have demonstrated that they are qualified and experienced advocates and have been able to vigorously conduct the litigation on behalf of the class. Plaintiffs' counsel all has extensive and particular experience in national complex class actions, wage and hour class action, and litigation and independent contractor misclassification

litigation, and they have served as Class Counsel. They are each qualified, experienced, and able to vigorously conduct the proposed litigation on behalf of the class. *DeGidio*, 2017 WL 5624310, at *14. With the litany of experience in class action and other complex litigation that Plaintiffs' Counsel brings, coupled with their zealous prosecution of Plaintiffs' claims to date, there can be no question that they are adequate to represent the Settlement class here.

Counsel have already expended considerable time and effort in researching the legal and factual issues relevant to this litigation, have conducted substantial discovery, and already obtained conditional certification of an FLSA collective action in this case. For these reasons, the Court should find that Plaintiffs and Counsel are adequate representatives of the proposed class, and that Plaintiffs have met the requirements of Rule 23(a).

e.      **The Class Satisfies the Criteria of Rule 23(b).**

Rule 23(b)(3) requires the Court to find that: (1) the questions of law or fact common to class members predominate over any questions affecting only individual members; and (2) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Plaintiffs believe both requirements are met in this case.

Plaintiffs assert that Plaintiffs and putative class members performed the same work and job duties under the same contractual arrangement with Defendants, and the question of Defendants' liability for allegedly illegal deductions from the class members' pay will be resolved on common evidence. In cases like this, many courts have found that common issues predominate, even when the party opposing class certification presents evidence of individualized inquiries. Thus, for purposes of this settlement, Plaintiffs assert that predominance is satisfied.

The second requirement of Rule 23(b)(3) is that the class action "be superior to other available methods for the fair and efficient adjudication of the controversy. Plaintiffs assert that this factor is satisfied here, where the Parties seek to resolve through a settlement class the similar legal

claims of 250 individuals, avoiding the possibility of repitious litigation were these claims to be address in separate proceedings. *DeGidio*, 2017 WL 5624310, at *15 (concentrating this litigation in one forum prevents against the risk of inconsistent outcomes and "serves to promote economies of time, effort and expense").

## V.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

As outlined above, the proposed Settlement is the product of arms-length negotiations between experienced counsel and with the assistance of two highly-qualified mediators. Furthermore, the proposed Settlement is fair and reasonable considering the risks Plaintiffs, FLSA Collective Members, and Class Members face in connection with continued litigation over liability, proof of damages and class membership, the length of the class period, and other defenses asserted by Defendants. Accordingly, the Parties request that the Court: (1) grant preliminary approval of the proposed settlement; (2) preliminarily certify a class under Fed. R. Civ. P. 23 and under Section 216(b) for settlement purposes; (3) appoint Shawn J. Wanta of Baillon Thome Jozwiak & Wanta LLP, Susan Ellingstad of Lockridge Grindal Nauen, PLLP, and J. Gordon Rudd of Zimmerman Reed LLP as Class Counsel; (4) approve Atticus Administration as the Settlement Administrator; (5) approve the form, content, and method and distribution of the Settlement Notice to Class Members; (6) direct that notice under the Class Action Fairness Act of 2005 ("CAFA") be issued to appropriate state and federal officials; (7) set a briefing schedule for: the joint motion for final approval, Class Counsel's motion for attorneys' fees, and Named Plaintiffs' motion for Service Awards; and (8) schedule a fairness hearing to consider final approval of the proposed settlement.

Federal Rule of Civil Procedure 23(e) requires court approval of any settlement of a class action.  "[T]he role of a court reviewing the proposed settlement of a class action under Fed. R. Civ. P. 23(e) is to assure that the procedures followed meet the requirements of the Rule and

comport with due process and to examine the settlement for fairness and adequacy." *In re MicroStrategy Inc. Securities Litigation*, 148 F. Supp.2d 654, 664 (E.D. Va. 2001) (citing *Vaughn v. Board of Educ. of Prince George's County,* 18 F. Supp.2d 569, 578 (D. Md.1998)). Approval of a class action settlement as reasonable under the relevant circumstances is within the sound discretion of the district court. *Evans v. Jeff D., 475* U.S. 717, 742 (1986). "[T]here is a strong initial presumption that the compromise is fair and reasonable." *South Carolina Nat'l Bank v. Stone,* 139 F.R.D. 335, 339 (D.S.C. 1991). At the preliminary approval stage, the court determines whether the proposed settlement is "within the range of possible approval" to justify providing notice of the settlement to the Class Members. *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994).

In analyzing whether to approve a proposed class action settlement, the district court must assess a settlement's "fairness" and other factors relevant to assess a settlement's "adequacy." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). To determine whether a settlement is fair, then, the district court focuses on whether the proposed settlement was reached as a result of good-faith bargaining at arm's length and without collusion. *Id.* at 159. When making this determination, the district court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[6]

As discussed more fully below, the Parties in this case reached a Settlement that represents an excellent result for the FLSA Collective and Class Members, satisfies the test for reasonableness, fairness and adequacy, and, therefore, is ripe for preliminary approval.

A.     **Class representatives and Class Counsel have adequately represented the class and support approval of the proposed settlement.**

In determining the fairness of the proposed settlement, the Court must ask "whether counsel is competent, dedicated, qualified, and experienced enough to conduct the litigation and whether there is an assurance of vigorous prosecution." *Kirven*, 2015 WL 1314086 at *5. The Court may afford significant weight to the opinion of Counsel that the settlement is in the best interests of the class where Counsel is recognized and experienced in the area. *MicroStrategy*, 148 F. Supp. 2d at 665; *Temp. Servs.*, 2012 WL 4061537 at *12. *See Flinn*, F.2d at 1174 (while the court should not blindly follow counsel's recommendations, it should give them significant weight). Both Plaintiffs' and Defendants' Counsel are highly experienced in wage and hour class action litigation and litigate these cases throughout the country. All Counsel also have extensive experience in the particular subject matter of independent contractor misclassification. Plaintiffs' Counsel's opinion that the Settlement is in the best interests of the Class members supports the fairness of the proposed settlement and weighs in favor of preliminary approval. The Settlement Satisfies the Adequacy Factors.

The Named Plaintiffs have likewise adequately represented the class. Each of the Named Plaintiffs worked for Defendants for over a decade and have considerable first-hand knowledge of

---

[6] Agreements required to be identified under Rule 23(e)(3) are any statement identifying any agreement made in connection with the proposal. The only such document in this case is a mediated term sheet that formed the basis for the Settlement Agreement.

the facts. They fully participated in all aspects of the case including pre-litigation investigation, discovery, and settlement. Each Named Plaintiff will participate in the settlement to the same extent as other class members. The Named Plaintiffs rejected several settlement proposals before agreeing to and supporting the proposed settlement. All of these factors indicate that the Named Plaintiffs are adequate class representatives.

**B.    The Parties reached the proposed settlement through arms-length negotiation following years of extensive discovery, briefing, and litigation.**

The Court should focus on the posture of the litigation at the time settlement was reached and whether the plaintiffs have "sufficiently developed the case such that they can appreciate the merits of the claims." *Muhammad v. Nat'l City Mtg., Inc.*, 2008 WL 5377783 *3 (S.D.W.V. Dec. 19, 2008) (citing *In re Serzone Prods. Liab. Litig.,* 231 F.R.D. 221, 244 (S.D.W.Va.2005)). Second, and relatedly, the Court must analyze whether plaintiffs "have conducted sufficient informal discovery and investigation to … evaluate [fairly] the merits of Defendants' positions during settlement negotiations." *In re MicroStrategy*, 148 F. Supp. 2d at 664-65. Both factors are easily satisfied here.

As discussed above, the Parties zealously litigated this case for over four years, engaging in significant discovery and motion practice. Plaintiffs' Counsel conducted substantial discovery, including reviewing and analyzing a substantial volume of documents and taking all the necessary depositions regarding Defendants' business model, the bakery delivery business, and the nature of the distributors' work.  Through discovery and motion practice, Plaintiffs' Counsel was able to fully analyze the merits of its claims, strength of Defendants' defenses, and the risks they faced in proving liability and damages.  Accordingly, Plaintiffs have been able to evaluate their claims and this Court should find the first two fairness factors are met.

The Court also must consider the circumstances surrounding the settlement negotiations in

evaluating the settlement's fairness. *Jiffy Lube*, 927 F.2d at 158-59. The Court must analyze whether the settlement negotiations were free from fraud or collusion to ensure that counsel did not settle the case for an insufficient amount to secure payment of attorney's fees. "Absent evidence to the contrary, the court may presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion." *Kirven v. Cent. States Health & Life Co*., 2015 WL 1314086 *5 (D.S.C. Mar. 23, 2015) (finding no collusion based on hard-fought negotiation lasting several weeks); *Muhammad v. Nat'l City Mtg., Inc.*, 2008 WL 5377783 *4; *Beaulieu v. EQ Indus. Servs., Inc.,* 2009 WL 2208131 at * 24 (W.D.N.C. July 22, 2009) (salient circumstances for purposes of analyzing negotiations are extended nature and whether they were adversarial); *Flinn v. FMC Corp.*, 528 F.2d 1169, 1174 (4th Cir. 1975) (no collusion found when settlement not hastily arrived at and after protracted discussions). Further, the "supervision by a mediator lends an air of fairness to agreements that are ultimately reached." *Temp. Servs. Ind. v. American Intern. Group Inc.,* 2012 WL 4061537 at *12 (S.D.N.C. Sept. 14, 2012).

By way of illustration, the class action waiver provision in the Arbitration Agreement was an essential term for Defendants to enter into a settlement agreement. Defendants have insisted upon this term in other similar settlements and it has been approved by several courts. In *Bokanoski v. Flowers*, 3:25-cv-00021 (D. Conn.), for example, the Court approved a settlement with Flowers' distributors, who alleged similar claims based on misclassification, that included a class action waiver provision. Under the settlement agreement, if the class members did not execute the Arbitration Agreement and agree to the class action waiver, they could not participate in the settlement. *Bokanoski*, 3:25-cv-00021, Doc. No. 116-2. The court approved the settlement agreement. *Id.* at Doc. No. 131 (Minute Order).

Here, the parties extensively negotiated the class action waiver provision for more than nine months with the assistance of mediator, Michael Dickstein. Plaintiffs' counsel believe this negotiation yielded measures that render the resulting agreement fair and reasonable in light of the total overall benefits of the settlement. Most importantly, the Arbitration Agreement is entirely voluntary; declining to execute the Arbitration Agreement will not create a Hobson's choice for distributors.[7] The decision will not affect class members' settlement allocation and they will fully participate in all monetary and non-monetary terms under the Settlement Agreement regardless of their decision to sign the Arbitration Agreement. While distributors who refuse to sign the Arbitration Agreement will forego the additional $3,500 payment, this amount, in Plaintiffs' counsel's view, is not so significant as to unduly pressure distributors to accept the additional compensation and forego the right to sue in court. Importantly, all payments declined by class members will be redistributed among all participants in the settlement to increase their pro rata shares, including the shares of those who declined to execute the Arbitration Agreement. The parties believe all of these measures have resulted in a Settlement Agreement that is fair, reasonable and adequate for the class.

Here, the circumstances surrounding settlement establish it was reached at arms-length and without collusion. As discussed above, before reaching a comprehensive agreement, the Parties engaged in three formal, multi-day mediation sessions with an experienced mediator. Further, between the June 2019 and the December 2019 mediation sessions, the Parties continued to negotiate through the mediator. The Parties ultimately reached a resolution after extensive

---

[7] Plaintiffs' counsel will be available to fully inform class members about the pros and cons of the Arbitration Agreement. And the Notice has been amended to expressly include information regarding the Arbitration Agreement provision.

negotiations. Given this history, the Court should have no concern regarding collusion here. *See MicroStrategy*, 148 F. Supp. 2d at 665.

### C. The relief provided in the proposed settlement is adequate under all relevant factors.

#### i. The Relative Strength of Plaintiffs' Case and Existence of Difficulties of Proof or Strong Defenses Support Approval.

To determine adequacy of the proposed settlement, the Court must evaluate the relative strength of plaintiffs' case on the merits and the existence of difficulties of proof or strong defenses. "'By far the most important factor is a comparison of the terms of the proposed settlement with the likely recovery that plaintiffs would realize if they were successful at trial.'" *Duvall v. O'Malley,* 2016 WL 3523682 *8 (D. Md. June 28, 2016) (citing *Blackman v. District of Columbia,* 454 F. Supp.2d 1, 8 (D.D.C. 2006)). *See Flinn,* 528 F.2d at 1172 (the most important factor is the strength of plaintiffs' claims on the merits).

Plaintiffs assert claims for overtime and unlawful deductions in this case. Plaintiffs assert that, because they are employees for purposes of the FLSA, the FLSA Collective Members are entitled to overtime premium pay for hours worked over 40 per week. *See* 29 U.S.C. § 207(a)(1). Further, Plaintiffs assert that the North Carolina Class Members are employees for purposes of the NCWHA, and thus are entitled to reimbursement for certain alleged unauthorized deductions from their pay.

Plaintiffs believe they obtained substantial evidence proving that the FLSA Collective Members and Class Members were employees under the FLSA and the NCHWA. Plaintiffs thus believe they would prevail on the threshold question of whether they are employees entitled to the protections of the FLSA and the NCWHA. Defendants, of course, deny that Plaintiffs would prevail and believe their defenses on the merits are strong. Defendants intend to assert a vigorous defense to the threshold question of independent contractor versus employment status.

Plaintiffs also believe their claims for overtime and unlawful deductions are strong. While Plaintiffs believe their claims are strong, Plaintiffs recognize the potential strength of the defenses Defendants would present at the summary judgment stage and at trial. Defendants would continue to challenge Plaintiffs' right to overtime under the FLSA based on an argument that they are otherwise exempt from overtime under outside sales and federal Motor Carrier Act exemptions because they drove vehicles with a gross vehicle weight or gross vehicle weight rating of at least 10,001 pounds. Plaintiffs are also aware that Defendants would challenge their North Carolina deductions claims. Defendants' assert that Plaintiffs did not receive "wages," that alleged deductions were not unlawful, and that putative Class Members otherwise fall outside the scope of the NCWHA. Again, Plaintiffs believe they can defeat these arguments, but recognize the risk at trial that their damages could be limited by Defendants' defenses.

Finally, Plaintiffs are aware that their obtaining or maintaining class certification and collective-action certification is by no means certain, whether at any point through trial or on appeal. This likewise supports preliminary approval here.

### ii.    The Anticipated Duration and Expense of Litigation.

Next, the Court considers the additional time and expense that would be necessary if the litigation proceeded to trial. *Jiffy Lube,* 927 F.2d at 158. "This factor is based on a sound policy of conserving the resources of the Court and the certainty that [avoiding] 'unnecessary and unwarranted expenditure of resources and time benefit[s] all parties.'" *Kirven*, 2015 WL 1314086 at *6 (internal citations omitted). This Action settled only after three years of discovery and completion of briefing on class certification and decertification of the FLSA Collective. Substantial briefing on dispositive issues remain before the Parties would even commence trial preparation or the pre-trial motion practice all requiring substantial investment in a matter of this complexity. *See MicroStrategy*, 148 F. Supp. 2d at 667 ("Nor is it likely that this litigation would

have ended with a jury verdict; there is little doubt that a jury verdict for either side would only have ushered in a new round of litigation in the Fourth Circuit and beyond, thus extending the duration of the case and significantly delaying any relief for plaintiffs.").  The Parties reached a settlement here, which weighs against the expense and resources of further litigation, involving substantial pre-trial motion practice, trial preparation, trial, and the certain delay of appeals following a judgment.  The Court should find that this factor also favors preliminary approval.

### iii.    *The terms of the agreed-upon attorneys fees are fair.*

Class Counsel plans to petition the Court for an award of attorneys fees under Fed. R. Civ. P. 23(h). The proposed agreement provides that Defendants will not oppose a fee request of one-third of the common fund—approximately $2,766,666—plus actual litigation costs. But the settlement is not contingent upon an award of a particular amount of attorneys fees. (*See* § 13.7.) Attorneys fees will not be paid from the fund until after Effective Date of the settlement, which is after all issues and appeals are resolved. The timing of attorneys fees and the nature of the agreement support the fairness and adequacy of the proposed settlement.

### D.    The proposed settlement treats all class members equitably relative to each other.

Finally, Rule 23(e)(2)(D) requires that the Court consider whether "the proposed settlement treats class members equitably relative to each other." *Sims v. BB&T Corp.*, No. 1:15-CV-732, 2019 WL 1995314 (M.D.N.C. May 06, 2019). This requires that the "apportionment of relief among class members takes appropriate account of differences among their claims." FED. R. CIV. P. 23 advisory committee notes to 2018 amendment. Here, the settlement plainly meets this requirement as the settlement share for each Settlement Class Members is directly linked and tailored to their claims at issue in this litigation. The settlement share allocation is individually determined based on transactional data from each Settlement Class Member's distributorship and

the number of weeks each such distributor worked within the applicable period. The same formula is applied to each member of the FLSA Collective and Rule 23 class.

For FLSA Collective Members, their settlement allocation reflects a percentage of their overall overtime damage estimate. The overtime estimate is based upon each member's actual compensation during the relevant period and calculated using the same formula. For Rule 23 Class Members, the allocation reflects damages for the same deductions at issue. Deduction damages are mechanically calculated based upon the actual deductions Defendants made and recorded in their computer system. For those who are both FLSA Collective Members and Rule 23 Class Members, with both federal overtime and state wage/deduction claims, their damages will be greater because those individuals chose to pursue their right to overtime pay. However, this "differential treatment is thus explained by the availability of greater damages to [those individuals]." *Reynolds v. Fid. Invs. Institutional Operations Co.*, No. 1:18-CV-423, 2020 WL 92092 (M.D.N.C. Jan. 07, 2020). Therefore, the proposed settlement treats class members equitably relative to each other and the settlement should be preliminarily approved. *See Clark v. Duke Univ.*, No. 1:16-CV-10442019, 2019 U.S. Dist. LEXIS 105696 (M.D.N.C. June 24, 2019).

### E. The Settlement is Also Reasonable Under the FLSA.

The Court also must approve collective action settlements under the FLSA. A FLSA settlement must reflect "a fair and reasonable compromise over a bona fide dispute." *Patel v. Barot,* 15 F. Supp.3d 648, 652-54 (E.D. Va. 2014). Although the Fourth Circuit has not directly addressed what factors district courts should consider when analyzing proposed FLSA settlements, district courts tend to follow the analysis the Eleventh Circuit put forth in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir.1982).*:* (1) Is there a bona fide dispute? (2) Is the proposed settlement fair and reasonable? *See, e.g., Saman v. LBDP, Inc.*, 2013 WL 2949047 at *2 (D. Md. June 13, 2013); *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 WL 3094955 at *11

(E.D.Va. Sept. 28, 2009). The Court should apply the standards for approval of settlements under Rule 23, except for the "bona fide dispute" requirement of the FLSA. *Lynn's Food Stores,* 679 F.2d at 1355; *Hall v. Higher One, Inc.*, 2016 WL 5416582 *5 (E.D.N.C. September 26, 2016); *Lomascolo,* 2009 WL 3094955 at *16.

"A bona fide dispute exists when an employee makes a claim that he or she is entitled to overtime payment. To settle such a dispute, there must be a resolution of the number of hours worked or the amount due." *Lomascolo,* 2009 WL 3094955 at *16. The FLSA Collective Members have alleged that because of their misclassification as independent contractors, Defendants did not pay them overtime compensation. Defendants deny their liability to the FLSA Collective Class and deny the amount claimed as overtime damages. The Parties move for the settlement of this case to avoid the risks and uncertainty of further litigation, including a trial and appeal of the FLSA claims and defenses. The Parties expressly state in the Settlement Agreement that it is not an admission of liability by Defendants. Accordingly, the Parties had a bona fide dispute over the entitlement to overtime under the FLSA, which is being resolved through the Settlement Agreement. *See Lomascolo,* 2009 WL 3094955 at *17. Preliminary approval of the Settlement is warranted accordingly.

## VI. PLAINTIFFS' PROPOSED CLASS NOTICE PROGRAM MEETS THE REQUIREMENTS OF RULE 23(e)

Under Rule 23(e), the Court "must direct notice in a reasonable manner to all Class Members who would be bound by a proposed settlement." Fed. R. Civ. P. 23(e)(1). The notice provided to members of a class certified under Rule 23(b)(3) must be the "best notice practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(c)(2) enumerates mandatory components of any initial class notice for a Rule 23(b)(3) class:

1. The nature of the action;
2. The definition of the class certified;

3.   The class claims, issues or defenses;
4.   that a Class Member may enter an appearance through an attorney if the member so desires;
5.   that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and
6.   that a class judgment will include all members who do not request exclusion.

Due process also requires a mailed settlement notice to contain a description of Class Members' rights in the litigation, and notice that Class Members have an opportunity to be heard and to participate in the litigation, whether in person or through counsel, and an opportunity to present objections to the settlement. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985). The Parties' proposed Settlement Notices meet each of the requirements enumerated in Rule 23(c)(2) as well as these additional due process requirements.

The Parties have drafted proposed Settlement Notices and a notice plan that satisfy the requirements of Rule 23(e) and due process. The proposed Settlement Notices, submitted as Exhibits 2A, 2B, 3A, 3B, 4A, and 4B to the Settlement Agreement, explain the nature of the action and the terms of the Settlement including: (1) the total settlement amount, (2) the attorney's fees to be requested, (3) how Class Members' and FLSA Collective Members' settlement payments will be calculated, (3) the estimated amount of each Class Members' and FLSA Collective Members' settlement share and the procedure for challenging the calculation, (4) the claims that will be released, (5) how the Class Member, including a Class Member who is also an FLSA Collective Member, may collect his or her portion of the settlement, exclude himself or herself from the Settlement, or object to the settlement, and (6) how FLSA Collective Members (including FSLA Collective Members who are also Class Members) may collect his or her portion of the settlement, object to the settlement, or withdraw from the Action . *See* Settlement Agreement Exs. 2A, 2B, 3A, 3B, 4A, and 4B. Prior to mailing the Settlement Notices, the Settlement Administrator will update FLSA Collective Members' and Class Members' addresses supplied by Defendants

with both the National Change of Address (NCOA) database and by skip-tracing each address. The Claims Administrator will make further appropriate efforts to locate more current address information for any returned Class Notice and will re-mail those for which an updated address has been found. This is the best notice practicable. *See Lace v. Fortis Plastics, LLC,* No. 3:12-CV-363-JD, 2015 WL 1383806, at *4 (N.D. Ind. Mar. 24, 2015) ("class notice shall be mailed by first class mail by Settlement Administrator."); *Oaks v. Moss*, No. 3:15-cv-00196, 2015 WL 5737595, at *2 (N.D. Ind. Sept. 29, 2015) ("The class administrator will confirm and if necessary update the addresses for Class Members through standard methodology that the class administrator currently uses to update addresses."); *Ohayon v. Hertz Corp.*, 2012 WL 4936058, at *5-6 (N.D. Cal. Oct. 16, 2012) (NCOA search and reasonable diligence to obtain addresses for returned mailings met the Rule 23 notice standards). The Court should find that the notice plan more than satisfies the requirements of Rule 23(e) and should approve the same.

The Parties propose that the Court appoint Atticus Administration ("Atticus") as the settlement administrator. Atticus will work under the direction of Class Counsel and Defendants' Counsel to implement the notice program that this Court approves and directs.

## VII.    CAFA NOTICE OF THE SETTLEMENT IS REQUIRED

The Class Action Fairness Act ("CAFA") requires that notice be served on "the appropriate Federal official" and the "appropriate State official" within "[n]ot later than 10 days after a proposed settlement of a class action is filed in court." 28 U.S.C. §1715(b). The Settlement Agreement provides for CAFA notice to be given sent by the Settlement Administrator after preliminary approval is filed in the form required by the statute.

## VIII.    THE COURT SHOULD SET A FINAL APPROVAL HEARING

Pursuant to Rule 23(e), following notice, courts conduct a fairness hearing where all interested parties have an opportunity to be heard. Following this hearing, the Court will determine

the fairness and adequacy of the Settlement. *See Jiffy Lube,* 927 F.2d at 158; *Temp. Servs.,* 2012 WL 4061537 at *11. The Parties request the Court to set a fairness hearing where the Court can consider, among other things, whether to grant final approval of the terms of the Settlement Agreement, whether to grant Class Counsel's request for attorney's fees and costs and for service payments to Plaintiffs, as well as any objections to the settlement, Class Counsel's fee request, or the service payments. The Court should also set the deadlines for Class Members who are not also FLSA Collective Members or Named Plaintiffs to exclude themselves from the settlement, for FLSA Collective Members who are also Class Members but not Named Plaintiffs to exclude themselves from the Settlement and withdraw, for FLSA Collective Members only who are not also Class Members or Named Plaintiffs to withdraw, and for objectors to file any objections with the Court in advance of the fairness hearing.

## IX.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the proposed settlement; (2) preliminarily certify a class under Fed. R. Civ. P. 23, for settlement purposes; (3) appoint Shawn J. Wanta of Baillon Thome Jozwiak & Wanta LLP, Susan Ellingstad of Lockridge Grindal Nauen, PLLP, and J. Gordon Rudd of Zimmerman Reed LLP as Class Counsel; (4) approve Atticus Administration as the Settlement Administrator; (5) approve the form, content, and method and distribution of the Settlement Notice to Class Members; (6) direct that notice under the Class Action Fairness Act of 2005 ("CAFA") be issued to appropriate state and federal officials; (7) set a briefing schedule for: the joint motion for final approval, Class Counsel's motion for attorneys' fees, and Named Plaintiffs' motion for Service Awards; and (8) schedule a fairness hearing to consider final approval of the proposed settlement.

Respectfully submitted this 11th day of May, 2020.

**ATTORNEYS FOR PLAINTIFFS**

/s/ *Shawn J. Wanta*
Shawn J. Wanta
Christopher D. Jozwiak
BAILLON THOME JOZWIAK & WANTA LLP
100 S. Fifth St., Suite 1200
Minneapolis, MN  55402
Telephone:  (612) 252-3570
Fax:  (612) 252-3571
sjwanta@baillonthome.com
cdjozwiak@baillonthome.com

Susan E. Ellingstad
Brian D. Clark
Rachel A. Kitze Collins
LOCKRIDGE GRINDAL NAUEN PLLP
100 Washington Ave. S., Suite 2200
Minneapolis, MN  55401
Telephone:  (612) 339-6900
Fax:  (612) 339-0981
seellingstad@locklaw.com
bdclark@locklaw.com
rakitzecollins@locklaw.com

David M. Cialkowski
J. Gordon Rudd, Jr.
ZIMMERMAN REED, LLP
1100 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone:  (612) 341-0400
Fax:  (612) 341-0844
david.cialkowski@zimmreed.com
gordon.rudd@zimmreed.com

Charles E. Schaffer
Levin Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA  19106
Telephone:  (215) 592-1500
Fax:  (215) 592-4663
cschaffer@lfsblaw.com

Leto Copeley

**ATTORNEYS FOR DEFENDANTS**

/s/ *Margaret S. Hanrahan*
Benjamin R. Holland (N.C. Bar No. 28580)
Michael D. Ray (N.C. Bar No.52947)
Elizabeth R. Gift (N.C. Bar No. 44331)
Margaret S. Hanrahan (S.C. Bar No. 72622)
OGLETREE, DEAKINS, NASH, SMOAK &
 STEWART, P.C.
201 South College Street, Suite 2300
Charlotte, N.C.  28244
Telephone:  (704) 342-2588
Fax:  (704) 342-4379
ben.holland@ogletreedeakins.com
michael.ray@ogletreedeakins.com
liz.gift@ogletreedeakins.com
maggie.hanrahan@ogletreedeakins.com

Copeley Johnson Groninger PLLC
300 Blackwell Street, Suite 101
Durham, NC  27701
Telephone:  (919) 240-4054
Fax:  (888) 412-0421
leto@cjglawfirm.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 11, 2020, I electronically filed the foregoing **Memorandum of Law in Support of Joint Motion for Preliminary Approval of Class & Collective Action Settlement** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record including the following counsel for Plaintiffs:

Shawn J. Wanta, Esq.
Christopher D. Jozwiak, Esq.
Scott A. Moriarity, Esq.
BAILLON THOME JOZWIAK & WANTA LLP
100 South Fifth Street, Suite 1200
Minneapolis, Minnesota 55402
(612) 252-3570
sjwanta@baillonthome.com
cjozwiak@baillonthome.com
smoriarity@baillonthome.com

Charles E. Schaffer
LEVIN SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106
(215) 592-1500
cschaffer@lfsblaw.com

Susan E. Ellingstad, Esq.
Brian D. Clark, Esq.
Rachel A. Kitze Collins, Esq.
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, Minnesota 55402
(612) 339-6900
seellingstad@locklaw.com
bdclark@locklaw.com
rakitzecollins@locklaw.com

David M. Cialkowski, Esq.
J. Gordon Rudd, Esq.
Jason P. Johnston, Esq.
ZIMMERMAN REED PLLP
1100 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 341-0400
david.cialjowski@zimmreed.com
gordon.rudd@zimmreed.com
jason.johnston@zimmreed.com

Leto Copeley
COPELEY JOHNSON & GRONINGER
PLLC
300 Blackwell Street, Suite 101
Durham, North Carolina 27701
(919) 240-4054
leto@cjglawfirm.com

/s/ Margaret S. Hanrahan
Margaret S. Hanrahan (S.C. Bar No. 72622)